### UNITED STATES DISTRICT COURT
### DISTRICT OF NEW JERSEY

CRAIG REID,                        :
                                   :    Civil Action No. 07-3815(SDW)
              Petitioner,          :
                                   :
         v.                        :    **OPINION**
                                   :
MICHELLE RICCI, et al.,            :
                                   :
              Respondents.         :

**APPEARANCES:**

    CRAIG REID, Petitioner <u>pro se</u>
    #228347/SBI 576236-B
    New Jersey State Prison
    P.O. Box 861
    Trenton, New Jersey 08625

    LEEANN CUNNINGHAM, ESQ.
    ESSEX COUNTY PROSECUTOR'S OFFICE
    Essex County Veteran's Courthouse
    50 West Market Street
    Newark, New Jersey 07102
    Counsel for Respondents

**WIGENTON,** District Judge

    Petitioner Craig Reid, a convicted state prisoner currently confined at the New Jersey State Prison in Trenton, New Jersey, has submitted a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. The named respondents are the Warden of New Jersey State Prison, Michelle Ricci, and the Attorney General of the State of New Jersey.

    For the reasons stated herein, the Petition will be denied for lack of substantive merit and because petitioner fails to raise a colorable federal claim.

I.   <u>BACKGROUND</u>

A.   <u>Statement of Facts</u>

The facts of this case were recounted below and this Court, affording the state court's factual determinations the appropriate deference, <u>see</u> 28 U.S.C. § 2254(e)(1), will simply reproduce the Appellate Division's factual recitation, as set forth in its December 22, 1998, unpublished Opinion on petitioner's direct appeal from his conviction:

> The facts presented to the jury are essentially undisputed. On February 23, 1995, defendant decided to commit an armed robbery at the Popular Club, a store located in East Orange. While the manager and four employees were preparing to close the store, defendant entered the premises armed with a handgun.  He wore a black mask over his face and yellow gloves on his hands.  One of the employees observed defendant enter the store and was able to escape and go next door for help.
>
> Defendant pointed the gun at the remaining four employees and demanded money.  He was given $50 from the cash register and told that there was no more money in the store.
>
> Defendant then asked if a safe was on the premises.  When told that a safe was in the rear of the store, he marched the women to that area at gunpoint.  He ordered the manager to open the safe.  Defendant pointed the gun at the manager and threatened to shoot her if she did not open the safe quickly.  The safe was opened and defendant took cash and placed it in a bag he was carrying.
>
> Thereafter, defendant attempted to leave the store through the front entrance.  As he tried to leave, he saw an armed constable looking in the window.  The constable had been notified of the robbery by the employee who fled when defendant entered the store.  Before going to the store, the constable called the police.
>
> When the police arrived defendant grabbed the manager and pointed his gun at her.  He exited the building using her as a shield.  He dragged her through the store's parking lot in

an effort to escape.  The police demanded that defendant
release the manager; however, defendant refused and
continued to drag her at gun point.  The manager eventually
grabbed on to a fence preventing defendant from pulling her
further.  Defendant then released her and began to flee.  He
turned around and pointed his gun at the police officers.
The officers, in turn, fired their weapons, injuring
defendant.  He was apprehended and taken to the hospital.

An Essex County investigator visited defendant while he was
hospitalized.  The investigator identified himself and
provided defendant with Miranda[1] warnings.  Defendant waived
his rights and the investigator proceeded to question him
about the circumstances surrounding the incident.  Defendant
told the investigator that he drove past the store and
observed that it was open, so he "decided just to do it."
He further revealed that he had been in prison for robberies
committed in 1989, and that he committed the instant offense
because his fiancee had left him and he wanted to go back to
jail.

Defendant offered a diminished capacity defense.  His family
members and a psychiatrist, Robert Latimer, M.D., testified
on his behalf.  The State provided the expert testimony of
Azariah Eshkenazi, M.D., a psychiatrist, to refute
defendant's defense of diminished capacity.  The jury found
defendant guilty of [four counts of armed robbery;
kidnapping; eight counts of unlawful possession of a
handgun; four counts of aggravated assault; burglary;
terroristic threats; and possession of a handgun by a
felon].

(Exhibit N,[2] December 22, 1998 Appellate Division Opinion).

---

[1]  Miranda v. Arizona, 384 U.S. 436 (1966).

[2]  Respondents provided this Court with the relevant state
court record, denoted as follows:

Exhibit A: Indictment No. 1815-5-95 and Indictment No. 1816-
5-95
Exhibit B: Judgment of Conviction
Exhibit C: Petitioner's Notices of Appeal
Exhibit D: February 10, 1997 Order granting Notice of Appeal
nunc pro tunc
Exhibit E: March 24, 1997 Order calendaring appeals back-to-
back

Exhibit F: Petitioner's Brief on direct appeal
Exhibit G: Petitioner's Appendix on direct appeal
Exhibit H: Petitioner's motion to consolidate appeals and
     submit one brief on both appeals
Exhibit I: April 3, 1998 Order denying motion to consolidate
     appeals
Exhibit J: State's responding letter brief on direct appeal
Exhibit K: State's responding letter brief on direct appeal
Exhibit L: Petitioner's pro se supplemental brief on direct
     appeal
Exhibit M: State's responding letter brief to petitioner's
     pro se supplemental brief
Exhibit N: December 22, 1998 Appellate Division Opinion
Exhibit O: Notice of Petition for Certification
Exhibit P: State's letter opposing Certification
Exhibit Q: March 30, 1999 Order denying Certification
Exhibit R: Petitioner's handwritten PCR petition dated
     February 13, 1999
Exhibit S: Petitioner's Notice of PCR Petition dated July
     25, 2001
Exhibit T: Petitioner's Amended PCR Petition dated March 3,
     2003
Exhibit U: Petitioner's supplemental letter brief dated May
     20, 2003
Exhibit V: Petitioner's supplemental letter brief dated
     February 13, 2004
Exhibit W: Petitioner's supplemental letter brief dated July
     27, 2004
Exhibit X: February 2, 2005 Order denying post-conviction
     relief
Exhibit Y: Petitioner's Notice of Appeal from denial of
     post-conviction relief
Exhibit Z: Petitioner's Brief on PCR appeal
Exhibit AA: Petitioner's Appendix on PCR appeal
Exhibit BB: State's responding letter brief on PCR appeal
Exhibit CC: January 24, 2007 Appellate Division Opinion
Exhibit DD: Petitioner's motion to file notice of petition
     for certification on PCR appeal
Exhibit EE: State's letter opposing Certification
Exhibit FF: June 7, 2007 Order denying Certification

1PTC - November 13, 1995 pretrial transcript
2PTC - December 4, 1995 pretrial transcript
  1T - June 18, 1996 pretrial transcript
  2T - June 19, 1996 pretrial transcript
  3T - June 20, 1996 trial transcript

B.   Procedural History

On May 10, 1995, an Essex County Grand Jury returned Indictment No. 1815-5-95 against petitioner, charging him with five counts of first degree armed robbery, one count of first degree kidnapping, one count of third degree receiving stolen property, one count of third degree unlawful possession of a handgun, nine counts of second degree possession of a handgun for an unlawful purpose, four counts of fourth degree aggravated assault; one count of second degree burglary, and one count of third degree terroristic threats.   (Exhibit A).

From June 18, 1996 through July 1, 1996, Reid was tried before a jury and the Honorable Michael A. Petrolle, J.S.C.  At the conclusion of trial, the jury returned a verdict of guilty on all counts except one count of armed robbery and one count of possession of a handgun for an unlawful purpose.   Count Seven of

---

       4T - June 24, 1996 trial transcript
       5T - June 25, 1996 trial transcript
       6T - June 26, 1996 trial transcript
       7T - June 27, 1996 trial transcript
       8T - June 28, 1996 trial transcript
       9T - July 1, 1996 trial transcript
       ST - August 5, 1996 sentencing transcript
      10T - April 21, 2004 PCR transcript
      11T - July 24, 2004 PCR transcript
      12T - September 16, 2004 PCR transcript
      13T - January 31, 2005 PCR transcript

the Indictment, receiving a stolen gun, was dismissed by the court.  On August 5, 1996, Judge Petrolle sentenced Reid to an aggregate term of life imprisonment plus fifty years, and a parole disqualifier of fifty years.  (Exhibit B and ST).

Reid promptly appealed his sentence and conviction to the Superior Court of New Jersey, Appellate Division.  (Exhibit C). On December 22, 1998, the Appellate Division affirmed the conviction, but remanded to correct the judgment of conviction to conform to the sentence intended by the sentencing court. (Exhibit N).  Reid then filed a petition for certification to the Supreme Court of New Jersey.  (Exhibit O).  Certification was denied on March 30, 1999.  (Exhibit Q).

On or about February 13, 1999, Reid prepared a handwritten petition for post-conviction relief ("PCR") for filing in state court.  (Exhibit R).  It does not appear that the PCR petition actually was filed.  Then, on July 25, 2001, Reid prepared a more formal PCR petition, which was filed by Reid's counsel on August 7, 2001.  (Exhibit S).  An amended verified PCR petition was filed by the Public Defender representing Reid on March 3, 2003. (Exhibit T).  Supplemental letters raising additional issues were submitted in May 2003, February 2004 and July 2004.  (Exhibits U, V, and W, respectively).  An evidentiary hearing[3] was held by Judge Petrolle, the original trial judge, regarding Reid's claims

---

[3]  It appears from the state court record submitted that the evidentiary hearing took place over the course of several days, April 21, 2004; July 29, 2004; and September 16, 2004.

of ineffective assistance of counsel on the issue of sentencing exposure.  On January 31, 2005, the court denied Reid's PCR petition, placing the reasons on record.  (13T).  An Order denying the PCR petition was entered on February 2, 2005.  (Exhibit X).

Reid appealed from the denial of his PCR petition.  (Exhibit Y).  On January 24, 2007, the Appellate Division affirmed the decision of the trial court.  (Exhibit CC).  The Supreme Court of New Jersey denied certification on June 7, 2007.  (Exhibit FF).

Reid filed this § 2254 habeas petition on August 13, 2007.  The State filed a response to the petition, including the relevant state court record, on January 30, 2008.

## II.  STATEMENT OF CLAIMS

Reid raises the following claims for habeas relief in his petition:

Ground One:  Petitioner was denied effective assistance of counsel based on counsel's failure to properly advise petitioner regarding his penal exposure at the time petitioner rejected the State's plea offer.

Ground Two:  Petitioner was denied effective assistance of appellate counsel based on counsel's failure to raise on appeal the specific use of robbery evidence at trial as constitutional error.

Ground Three: The trial court failed to adequately instruct the jury on constructive possession and on the lesser-included offense charge of criminal restraint.

Ground Four:  Petitioner was sentenced to an invalid consecutive sentence in violation of <u>Blakely v. Washington</u>, 542 U.S. 296 (2004).

The State contends that the petition should be denied for lack of substantive merit.  The State does not advance the affirmative defense that the habeas petition may be time-barred, and submits that petitioner's habeas claims have been exhausted on state court review.

### III.   <u>STANDARD OF REVIEW</u>

A pro se pleading is held to less stringent standards than more formal pleadings drafted by lawyers.  <u>Estelle v. Gamble</u>, 429 U.S. 97, 106 (1976); <u>Haines v. Kerner</u>, 404 U.S. 519, 520 (1972). A pro se habeas petition and any supporting submissions must be construed liberally and with a measure of tolerance.  <u>See</u> <u>Royce v. Hahn</u>, 151 F.3d 116, 118 (3d Cir. 1998); <u>Lewis v. Attorney General</u>, 878 F.2d 714, 721-22 (3d Cir. 1989); <u>United States v. Brierley</u>, 414 F.2d 552, 555 (3d Cir. 1969), <u>cert. denied</u>, 399 U.S. 912 (1970).  Because petitioner is a <u>pro</u> <u>se</u> litigant, the Court will accord his petition the liberal construction intended for <u>pro</u> <u>se</u> petitioners.

Under § 2254, as amended by the Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA"), federal courts in habeas

matters must give considerable deference to determinations of the
state trial and appellate courts.  See 28 U.S.C. § 2254(e);
Duncan v. Morton, 256 F.3d 189, 196 (3d Cir.), cert. denied, 122
S.Ct. 269 (2001); Dickerson v. Vaughn, 90 F.3d 87, 90 (3d Cir.
1996)(*citing* Parke v. Raley, 506 U.S. 20, 36 (1992)).  Section
2254(d) sets the standard for granting or denying a habeas writ:

> (d)  An application for a writ of habeas corpus on
> behalf of a person in custody pursuant to the judgment
> of a State court shall not be granted with respect to
> any claim that was adjudicated on the merits in State
> court proceedings unless the adjudication of the claim -
>> (1)   resulted in a decision that was contrary to, or
>> involved an unreasonable application of, clearly
>> established Federal law, as determined by the
>> Supreme Court of the United States; or
>> (2)   resulted in a decision that was based on an
>> unreasonable determination of the facts in light
>> of the evidence presented in the State court
>> proceeding.

28 U.S.C. § 2254(d).

In Williams v. Taylor, 529 U.S. 362 (2000), the Supreme
Court explained that subsection (d)(1) involves two clauses or
conditions, one of which must be satisfied before a writ may
issue.  The first clause, or condition, is referred to as the
"contrary to" clause.  The second condition is the "unreasonable
application" clause.  Williams, 529 U.S. at 412-13.  In the
"contrary to" clause, "a federal court may grant the writ if the
state arrives at a conclusion opposite to that reached by [the
Supreme] Court on a question of law or if the state court decides
a case differently than [the Supreme] Court has on a set of
materially indistinguishable facts."  Id.  Under the

"unreasonable application" clause, a federal court may grant the writ if "the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of [the petitioner's] case." Id. at 413.  Habeas relief may not be granted under the "unreasonable application" condition unless a state court's application of clearly established federal law was objectively unreasonable; an incorrect application of federal law alone is not sufficient to warrant habeas relief.  Id. at 411.  See also Werts, 228 F.3d at 197; Matteo v. Superintendent, SCI Albion, 171 F.3d 877, 891 (3d Cir. 1999), cert. denied sub nom Matteo v. Brennan, 528 U.S. 824 (1999).

Consonant with Williams, the Third Circuit has held that § 2254(d)(1) requires a federal habeas court to make a two step inquiry of the petitioner's claims.  First, the court must examine the claims under the "contrary to" provision, identify the applicable Supreme Court precedent and determine whether it resolves petitioner's claims.  See Werts, 228 F.3d at 196-97; Matteo, 171 F.3d at 888-891.  If the federal court determines that the state court's decision was not "contrary to" applicable Supreme Court precedent, then the court takes the second step of the analysis under § 2254(d)(1), which is whether the state court unreasonably applied the Supreme Court precedent in reaching its decision.  Werts, 228 F.3d at 197.

This second step requires more than a disagreement with the state court's ruling because the Supreme Court would have reached a different result. Id. AEDPA prohibits such de novo review. Rather, the federal habeas court must determine whether the state court's application of the Supreme Court precedent was objectively unreasonable. Id. In short, the federal court must decide whether the state court's application of federal law, when evaluated objectively and on the merits, resulted in an outcome that cannot reasonably be justified under existing Supreme Court precedent. Id.; see also Jacobs v. Horn, 395 F.3d 92, 100 (3d Cir. 2005).

Even a summary adjudication by the state court on the merits of a claim is entitled to § 2254(d) deference. Chadwick v. Janecka, 312 F.3d 597, 605-06 (3d Cir. 2002), cert. denied, 538 U.S. 1000 (2003)(citing Weeks v. Angelone, 528 U.S. 225, 237 (2000)). With respect to claims presented to, but unadjudicated by, the state courts, however, a federal court may exercise pre-AEDPA independent judgment. See Hameen v. State of Delaware, 212 F.3d 226, 248 (3d Cir. 2000), cert. denied, 532 U.S. 924 (2001); Purnell v. Hendricks, 2000 WL 1523144, *6 n.4 (D.N.J. 2000). See also Schoenberger v. Russell, 290 F.3d 831, 842 (6th Cir. 2002) (Moore, J., concurring) (and cases discussed therein).

Finally, federal courts are required to apply a "presumption of correctness to factual determinations made by the state court." Id.; see also 28 U.S.C. § 2254(e)(1). The Third Circuit

has ruled that this presumption of correctness based upon state court factual findings can only be overcome by clear and convincing evidence.  <u>See</u> <u>Duncan</u>, 256 F.3d at 196 (*citing* 28 U.S.C. § 2254(e)(1)).  Consequently, a habeas petitioner "must clear a high hurdle before a federal court will set aside any of the state court's factual findings." <u>Mastracchio v. Vose</u>, 274 F.3d 590, 597-98 (1st Cir. 2001).

IV.   <u>ANALYSIS</u>

A.   <u>Ineffective Assistance of Trial Counsel</u>

The right to counsel is the right to effective assistance of counsel, and counsel can deprive a defendant of the right by failing to render adequate legal assistance.  <u>See</u> <u>Strickland v. Washington</u>, 466 U.S. 668, 686 (1984).  Under <u>Strickland</u>, a petitioner seeking to prove a Sixth Amendment violation must demonstrate that his counsel's performance fell below an objective standard of reasonableness, assessing the facts of the case at the time of counsel's conduct.  <u>Id</u>. at 688-89; <u>Jacobs v. Horn</u>, 395 F.3d 92, 102 (3d Cir. 2005), <u>cert</u>. <u>denied</u>, <u>Jacobs v. Beard</u>, 126 S.Ct. 479 (2005); <u>Keller v. Larkins</u>, 251 F.3d 408, 418 (3d Cir. 2001).  Counsel's errors must have been "so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." <u>Strickland</u>, 466 U.S. at 688.  "In any case presenting an ineffectiveness claim, the performance inquiry must be whether counsel's assistance was reasonable considering all the circumstances." <u>Id.</u>  The Supreme Court further explained:

> Judicial scrutiny of counsel's performance must be highly deferential.  It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable.  A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time.  Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action "might be considered sound trial strategy."

Id. at 689 (citations omitted); see also Virgin Islands v. Wheatherwax, 77 F.3d 1425, 1431 (3d Cir. 1996).

If able to demonstrate deficient performance by counsel, the petitioner must also show that counsel's substandard performance actually prejudiced his defense.  Strickland, 466 U.S. at 687. Prejudice is shown if "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome."  Id. at 694.  The reviewing court must evaluate the effect of any errors in light of the totality of the evidence. Id. at 695-96.  Thus, the petitioner must establish both deficient performance and resulting prejudice in order to state an ineffective assistance of counsel claim.  Id. at 697; see also Jacobs, 395 F.3d at 102; Keller, 251 F.3d at 418.

In this case, Reid asserts that his trial counsel failed to adequately inform him as to the extent of his penal exposure at the time petitioner rejected the State's plea offer.  In particular, Reid claims that his attorney failed to inform him of his exposure to enhanced sentencing, including consecutive sentences.  This claim was raised by petitioner both on direct appeal and in his state PCR proceedings.

On direct appeal, the Appellate denied Reid's ineffective assistance of counsel claim, noting that petitioner's contentions were "without sufficient merit to warrant any further discussion in a written opinion."  (Exhibit N).  Reid raised the claim again in his PCR petition.  In an oral decision rendered on January 31, 2005, the state PCR court found:

> The petitioner asserts by way of the brief submitted by petitioner pro se and the brief submitted by PCR counsel that petitioner was denied effective assistance of trial counsel because he was erroneously advised by trial counsel regarding his penal exposure, by the time he rejected the State's further offer.  The petitioner asserts ineffective assistance of counsel and certain contentions of details submitted in his brief submitted pro se, to which PCR counsel's brief alluded as well.
>
> ...
>
> Now, the evidentiary hearing sought on behalf of defendant was permitted and conducted and the defendant had the opportunity to examine trial counsel, Richard Roberts, and to present any of them to ineffective assistance contention. This Court sitting as PCR court, also having been the trial Court for the conduct of trial itself, has considered these contentions, as well as the evidence presented at the hearing and has determined these findings and conclusions:
>
> First, the Court finds and concludes that the State did not make a formal offer for resolution by way of an agreement for plea of guilty rather than a trial.  Further, that trial

counsel did engage in discussions concerning various possibilities and/or hopes for guilty plea offers and intended penal exposures and their limitations, separately with the Assistant Prosecutor, with the petitioner and apparently with the petitioner's mother on different separate occasions.

Also, that no formal plea offer was extended and available for inspection by trial counsel or for rejection by the petitioner and accordingly that the beliefs asserted by the petitioner and/or his mother that a plea offer was made by the State, and/or that erroneous advice about such a plea offer was provided by trial counsel, appeared to result from individual or combined misrecollections and/or misunderstandings of the petitioner and his mother.

Moreover, pursuant to the evidentiary hearing, the Court is satisfied that trial counsel, Richard Roberts, an experienced and seasoned trial attorney whose practice is primarily criminal defense, did not give the defendant erroneous advice concerning the extended term and other exposure for sentencing, or considering the tentative offer, as trial counsel apparently discussed.

Therefore, although the evidence establishes the absence of any formal plea offer, the Court concludes that had such an offer been made, the petitioner cannot fairly be found to have been without effective assistance of trial counsel to assess and accept or reject it.  Indeed, the defendant, even by arguments asserted by counsel, rejected an offer where they realize his exposure was life.  We all understand that 30-to-life is a long time and in the face of that tentative offer, at best, and that discussion as well as the Prosecutor's mention of extended term, the parties did not proceed with seeking or discussing an offer beyond that point because it was clear and it appeared the discussions had broken down and the matter was headed for trial.

Indeed, when I received the list from Judge Kirby, the matter was scheduled for trial.  Apparently, all plea discussions had been concluded or terminated and the matter at that point was a matter that was on the trial list.  '97, there were discussions about whether the defendant would assert insanity or diminished capacity.  There was a hearing that was conducted by this Judge in anticipation of the trial where the defendant consciously and expressly made the distinctive choice discerning the difference between an insanity and diminished capacity defense and chose a diminished capacity defense.  Even at that time, throughout those discussions going to the substance and the merits of

the case, there was no further plea discussions.  It was
clear to this Court that the defendant was proceeding to
trial and that the State was not making a plea offer.

(13T 16:11-20:13).

On appeal from denial of the PCR petition, the Appellate

Division affirmed, finding:

The [PCR] judge heard testimony from defendant, his mother
and defendant's trial counsel.  The judge also had available
to him the trial transcripts, as well as the transcript of
the December 4, 1995 pretrial hearing in which defendant
acknowledged he was facing "about 30 to life."  Following
oral argument on January 31, 2005, the judge denied
defendant's PCR application.  As to the ineffective
assistance claim, Judge Petrolle determined that trial
counsel did not give defendant erroneous advice concerning
the extended term or penal exposure.  The Judge found the
State had not made a plea offer, but even if a formal offer
had been made, defendant chose to go to trial and pursue a
diminished capacity defense with full knowledge of his
potential exposure. ...

After carefully reviewing the record, we are satisfied
defendant's arguments are without sufficient merit to
warrant further discussion.  R. 2:11-3(e)(2).  Rather than
dismissing defendant's PCR petition as time-barred under
Rule 3:22-12, Judge Petrolle heard defendant's petition on
the merits and afforded him the opportunity of a fair and
adequate evidentiary hearing.  Giving due deference to the
trial judge's opportunity to hear and see the witnesses, we
are satisfied there is ample evidence in the record to
support his factual findings and that he applied the
appropriate law.  State v. Locurto, 157 N.J. 463, 470-71
(1999); State v. Johnson, 42 N.J. 146, 161-62 (1964).
Defendant did not prove ineffective assistance of trial or
appellate counsel.  Strickland v. Washington, 466 U.S. 668,
104 S.Ct. 2052, 80 L. Ed.2d 674 (1984); United States v.
Cronic, 466 U.S. 648, 104 S.Ct. 2039, 80 L. Ed.2d 657
(1984); State v. Fritz, 105 N.J. 42, 52-58 (1987). ...

(Exhibit CC, January 24, 2007 Appellate Division Opinion).

Here, petitioner has made no showing to contradict the state

court rulings that his trial counsel's performance was not

deficient in any way.  Moreover, even if Reid could show that the

16

actions (or inactions) of his counsel were deficient, he cannot satisfy the prejudice prong under Strickland.  Both the PCR court and Appellate Division found that there was no actual, conclusive offer of a plea bargain.  Thus, Reid can not argue that trial counsel's alleged failure to inform him as to his penal exposure kept petitioner from accepting a plea offer that would have been less than the sentence he received at the conclusion of his jury trial.  In other words, Reid has not demonstrated how such information about his penal exposure would have served to change the outcome this matter, when there was no plea offer actually made for him to accept or reject.

This Court is satisfied from its review of the pertinent state court record that there was ample evidence to support the state court rulings on this issue.  This Court also finds that Reid has not established a constitutional violation; nor has he shown, as required under 28 U.S.C. § 2254(d), that the actions of the state courts resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court in Strickland, or resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings.  Therefore, this ineffective assistance of trial counsel claim for habeas relief will be denied.

B.   Ineffective Assistance of Appellate Counsel

Reid also contends that his appellate counsel was
ineffective because he failed to raise the issue of the specific
use of robbery evidence as constitutional error on direct appeal.
The Supreme Court has held that the Due Process Clause of the
Fourteenth Amendment guarantees a defendant the effective
assistance of counsel on a first direct appeal as of right.
Evitts v. Lucey, 469 U.S. 387 (1985).  Claims of ineffective
assistance of appellate counsel are evaluated under the
Strickland standard.  See Lewis v. Johnson, 359 F.3d 646, 656 (3d
Cir. 2004); Wright v. Vaughn, 2004 WL 1687865, *6, n.10 (E.D. Pa.
July 26, 2004).  Appellate counsel does not have a duty to
advance every nonfrivolous argument that could be made, see Jones
v. Barnes, 463 U.S. 745, 754 (1983), but a petitioner may
establish that appellate counsel was constitutionally ineffective
"if he shows that counsel omitted significant and obvious issues
while pursuing issues that were clearly and significantly
weaker."  Mayo v. Henderson, 13 F.3d 528, 533 (2d Cir. 1994).

Moreover, in order to prevail on a claim that appellate
counsel was ineffective, a petitioner must show not only that
counsel's performance fell below an objective standard of
reasonableness, but also that there was a reasonable probability,
but for counsel's deficiency in raising the arguments on appeal,
that the conviction would have been reversed on appeal.  See

Buehl v. Vaughn, 166 F.3d 163, 173-74 (3d Cir. 1999), cert. dismissed, 527 U.S. 1050 (1999).

Here, Reid raised this claim in his state PCR proceedings. The PCR court rejected the claim without much discussion, but did note that appellate counsel did raise the issue on direct appeal and that the Appellate Division did address it. (13T 23:23-24:11). Further, the Appellate Division expressly found that Reid had not proven ineffective assistance of appellate counsel. (Exhibit CC).

Consequently, based on the state court record and state court factual findings, this Court finds no merit to Reid's claim. Indeed, this Court's review of the state court record confirms that Reid's appellate counsel prepared a very thorough brief on behalf of petitioner. The very first claim on direct appeal involved the admission of petitioner's prior robbery convictions in 1989 as evidence at trial, which frankly was introduced with respect to Reid's diminished capacity defense.[4]

---

[4] Generally, issues as to the admissibility of evidence, as asserted by Reid here, are questions of state law and not subject for federal habeas review. See Estelle v. McGuire, 502 U.S. 62, 68 (1991); Johnson v. Rosemeyer, 117 F.3d 104, 112-15 (3d Cir. 1997). See also Keller v. Larkins, 251 F.3d 408, 416 n.2 (3d Cir.), cert. denied, 534 U.S. 973 (2001). Federal courts must afford the states deference in its determinations regarding evidence and procedure. See Crane v. Kentucky, 476 U.S. 683, 690 (1986). It is well-established that "a state court's misapplication of its own law does not generally raise a constitutional claim. The federal courts have no supervisory authority over state judicial proceedings and may intervene only to correct wrongs of constitutional dimension." Smith v. Horn, 120 F.3d 400, 414 (3d Cir. 1997)(citations omitted), cert. denied, 522 U.S. 1109 (1998). However, evidentiary rulings may violate due process when

Appellate counsel principally argued that it was reversible error
for the trial court to admit the reference to Reid's prior
robberies.  The Appellate Division expressly found no
constitutional or otherwise reversible error in the admission of
this evidence at trial.  (December 22, 1998 Appellate Division
Opinion at pp. 7-10).  Thus, petitioner's ineffective assistance
of appellate counsel claim fails because Reid cannot demonstrate

---

the petitioner "was denied fundamental fairness at trial."
Hutchins v. Hundley, 1991 WL 167036 at *4 (D.N.J. Aug. 22,
1991)(Wolin, J.)(citations omitted); see also Kontakis v. Beyer,
19 F.3d 110, 120 (3d Cir. 1994), cert. denied, 513 U.S. 881
(1994); Lisenba v. California, 314 U.S. 219, 228, 236
(1941)(holding that state court's evidentiary rulings may form
the basis for habeas relief when they "so infused the trial with
unfairness as to deny due process of law").

     The appropriate inquiry is "whether the claimed error of law
is a fundamental defect which inherently results in a complete
miscarriage of justice or in an omission inconsistent with the
rudimentary demands of fair procedure." Hutchins, 1991 WL 167036
at *4 (citing United States v. De Luca, 889 F.2d 503, 506 (3d
Cir. 1989), cert. denied, 496 U.S. 939 (1990))(other citations
omitted).  The Supreme Court has further stated that "an
otherwise valid conviction should not be set aside if the
reviewing court may confidently say on the whole record that the
constitutional error was harmless beyond a reasonable doubt."
Delaware v. Van Arsdall, 475 U.S. 673, 681 (1986).  An error is
not harmless if "it aborts the basic trial process or denies it
altogether." Hutchins, 1991 WL 167036 at *5 (citing Rose v.
Clark, 478 U.S. 570, 578 n.6 (1986)).

     Here, the admission of petitioner's prior robberies as
evidence at trial bore on the issue of Reid's affirmative defense
of diminished capacity, and consequently, was permissible under
state law and rules of evidence, and did not amount to an error
of constitutional dimension.  Reid has not shown that the trial
process was fundamentally unfair, or that the state trial court
evidentiary rulings allowed the admission of any improper
evidence.  Further, Reid has not demonstrated, as required under
28 U.S.C. § 2254(d), that the actions of the state court in this
regard resulted in a decision that was contrary to, or involved
an unreasonable application of, clearly established federal law,
or resulted in a decision based on an unreasonable determination
of the facts.

either deficient performance or any resulting prejudice.
Therefore, this Court will deny this claim pursuant to 28 U.S.C.
§ 2254(b)(2), because it is completely lacking in merit.

C.   Inadequate Jury Instructions

Generally, a jury instruction that is inconsistent with
state law does not merit federal habeas relief.  Where a federal
habeas petitioner challenges jury instructions given in a state
criminal proceeding,

> [t]he only question for us is "whether the ailing
> instruction by itself so infected the entire trial that
> the resulting conviction violates due process."  It is
> well established that the instruction "may not be
> judged in artificial isolation," but must be considered
> in the context of the instructions as a whole and the
> trial record.  In addition, in reviewing an ambiguous
> instruction ..., we inquire "whether there is a
> reasonable likelihood that the jury has applied the
> challenged instruction in a way" that violates the
> Constitution.  And we also bear in mind our previous
> admonition that we "have defined the category of
> infractions that violate 'fundamental fairness' very
> narrowly."  "Beyond the specific guarantees enumerated
> in the Bill of Rights, the Due Process Clause has
> limited operation."

Estelle v. McGuire, 502 U.S. 62, 72-73 (1991) (citations
omitted).  Thus, the Due Process Clause is violated only where
"the erroneous instructions have operated to lift the burden of
proof on an essential element of an offense as defined by state
law."  Smith v. Horn, 120 F.3d 400, 416 (1997), cert. denied, 522
U.S. 1109 (1998).  See also In re Winship, 397 U.S. 358, 364
(1970) ("the Due Process Clause protects the accused against
conviction except upon proof beyond a reasonable doubt of every
fact necessary to constitute the crime with which he is

charged"); <u>Sandstrom v. Montana</u>, 442 U.S. 510, 523 (1979) (jury instructions that suggest a jury may convict without proving each element of a crime beyond a reasonable doubt violate the constitutional rights of the accused).

Where such a constitutional error has occurred, it is subject to "harmless error" analysis. <u>Smith v. Horn</u>, 120 F.3d at 416-17; <u>Neder v. United States</u>, 527 U.S. 1, 8-11 (1999). "[I]f the [federal habeas] court concludes from the record that the error had a 'substantial and injurious effect or influence' on the verdict, or if it is in 'grave doubt' whether that is so, the error cannot be deemed harmless." <u>Id.</u> at 418 (citing <u>California v. Roy</u>, 519 U.S. 2, 5 (1996)). In evaluating a challenged instruction,

> a single instruction to a jury may not be judged in artificial isolation, but must be viewed in the context of the overall charge. If the charge as a whole is ambiguous, the question is whether there is a reasonable likelihood that the jury has applied the challenged instruction in a way that violates the Constitution.

<u>Middleton v. McNeil</u>, 541 U.S. 433, 437 (2004) (internal quotations and citations omitted).

Here, Reid argues that the trial court failed to adequately instruct the jury on the issues of constructive possession and on the lesser-included offense charge of criminal restraint. Reid first raised this claim on direct appeal in his pro se brief, and the Appellate Division rejected all of the pro se contentions

made as lacking sufficient merit to warrant discussion in a
written opinion.  (Exhibit N).

Petitioner then pursued this claim in his PCR proceedings.
However, the PCR court also rejected Reid's argument, finding
that:

> In connection with the contention that trial counsel failed
> to request jury instructions upon the lesser included of
> criminal restraint, there does not appear to be any basis in
> the evidence presented at trial to acquit the petitioner of
> the charge of kidnapping and convict him of a lesser charge
> of criminal restraint.  The evidence of the conduct which
> gave rise to the kidnapping involved, if I remembered,
> grabbing who was the store manager in pointing his gun at
> her.  When the police arrived, his holding her, using her as
> a shield.  His dragging her with him in an effort to escape.
> His refusing pleas, demands to release her and continuing to
> drag her at gunpoint.
>
> The evidence, along these lines, does not support a mere
> criminal restraint, but clearly supports a charge of
> kidnapping, if the jury believed it.  And indeed, in this
> case, the jury did believe it.  I observed further that
> this, among the other issues, was raised on appeal and
> apparently rejected by the Appellate Court.

(13T 22:1-21).

Thus, in this case, the state PCR court and the Appellate
Division apparently evaluated the entire trial record and jury
charge and found no reversible error with respect to the omission
of a charge on constructive possession and the lesser-included
offense of criminal restraint, and which absence of such jury
instructions would not have had the capacity to produce an unjust
result.  Likewise, this Court finds, after carefully reviewing
the trial transcript and jury charges in whole, that any error as
asserted by Reid with respect to omitted jury charges was non-

existent, or at the very most, plainly harmless in light of the overall record.  Put simply, petitioner's claim lacks constitutional dimension, and this Court finds that the thorough decision of the PCR court on this issue, as affirmed by the Appellate Division, is neither contrary to nor an unreasonable application of the applicable federal law, nor is the decision based upon an unreasonable determination of the facts. Accordingly, Reid is not entitled to relief on this claim asserting inadequate jury instructions.

D.   Blakely Claim As To Consecutive Sentences

In his last ground for habeas relief, Reid argues that he was sentenced to an invalid consecutive sentence in violation of Blakely v. Washington, 542 U.S. 296 (2004).  Namely, petitioner appears to be suggesting that the imposition of a consecutive sentence was based on facts not decided upon by the jury.

Reid raised various claims concerning his sentence on direct appeal and then in his PCR proceedings.  On direct appeal, the Appellate Division found that:

> Defendant asserts that his sentence is excessive and sets forth three arguments: (1) the judge erred in sentencing him to presumptive extended terms for robbery and kidnapping; (2) the judge erred in sentencing him to consecutive terms for kidnapping and possession of a weapon by a convicted felon; and (3) the judge erred in sentencing him to the maximum term of ten years on possession of a weapon by a convicted felon because there was no evidence of aggravating factor N.J.S.A. 2C:44-1a(1).

> We reject these arguments.  Here, defendant's extended term sentences were mandatory because of his prior convictions with the use of a firearm.  See N.J.S.A. 2C:43-6.  Our review of the record convinces us that the findings of fact

regarding aggravating and mitigating factors were based on competent and credible evidence in the record, that the judge correctly applied the sentencing guidelines and that in applying the facts to the law, the judge reached a conclusion that could have reasonably been made upon a weighing of the relevant factors. State v. O'Donnell, 117 N.J. 210, 215 (1989); State v. Roth, 95 N.J. 334, 365-66 (1984).

(Exhibit N).

In its answer to the habeas petition, the State argued that the Judgment of Conviction confirms that the sentence imposed by the state court was valid and not excessive under state law. For instance, the sentencing judge found that the offenses were conducted in an especially cruel, heinous or depraved manner, and noted the gravity and seriousness of harm inflicted on the victims. The sentencing court also remarked that there was a risk that Reid would commit another offense given his prior criminal record and the seriousness of the convicted offenses. The court further noted that there were no mitigating factors. (See Judgment of Conviction at Exhibit B).

Thus, absent a claim that the sentence constitutes cruel and unusual punishment prohibited by the Eighth Amendment, or that it is arbitrary or otherwise in violation of due process, Reid's claim concerning the legality of his state court sentence is a question of state law. See Chapman v. United States, 500 U.S. 453, 465 (1991); Gryger v. Burke, 334 U.S. 728, 731 (1948); Jones v. Superintendent of Rahway State Prison, 725 F.2d 40, 42-43 (3d

Cir. 1984).[5]  "[A] person who has been so convicted is eligible
for, and the court may impose, whatever punishment is authorized
by statute for his offense, so long as that penalty is not cruel
and unusual . . . and so long as the penalty is not based on an
arbitrary distinction that would violate the Due Process Clause
of the Fifth Amendment."  Chapman, 500 U.S. at 465 (citations
omitted).  Because the excessive sentence ground does not assert
a federal constitutional claim, this Court finds that Reid is not
entitled to habeas relief on this ground.

However, in his PCR proceedings, Reid later raised the claim
that his consecutive sentence was invalid because it violates the
Sixth Amendment as set forth in Blakely v. Washington, 542 U.S.
296 (2004).  (Exhibit S).  In reviewing the claim, the PCR court
expressly found no Sixth Amendment violation under Blakely.
Specifically, the court stated:

> Now, there's a second supplemental letter dated July 27,
> 2004.  And there, counsel argues that the imposition of

---

[5] In Gryger v. Burke, 334 U.S. 728, 731 (1948), the Supreme
Court rejected the petitioner's due process challenge to a life
sentence imposed by the Pennsylvania courts.  The petitioner
argued that the sentencing judge mistakenly regarded as mandatory
a sentence which was discretionary.  The Supreme Court held:

> We are not at liberty to conjecture that the
> trial court acted under an interpretation of
> the state law different from that which we
> might adopt and then set up our own
> interpretation as a basis for declaring that
> due process has been denied.  We cannot treat
> a mere error of state law, if one occurred,
> as a denial of due process; otherwise, every
> erroneous decision by a state court on state
> law would come here as a federal
> constitutional question.

consecutive sentences was based on facts not decided upon by
the jury and is, therefore, invalid.  She, of course,
invokes State –- Blakely versus Washington.  I might note in
her argument, she does not question the sentences imposed by
the Court.  Those were addressed in Appellate Court and even
the consecutive sentencing was addressed there.  And
therefore, those issues have been resolved.

...

We reject the argument that Blakely v. Washington, they omit
the citation, prohibits the consecutive feature of the
sentence.  The order cites additional cases, among them
State v. Abdullah, A B D U L L A H, 372 N.J. Super.  252,
283 (App. Div. 2004).  It also cites State v. King,
K I N G, 372 N.J. Super. 227 (Ap. Div. 2004).  The
consecutive nature of the sentences here does not appear to
be prohibited by Blakely vs. Washington.  Generally
speaking, they're separate crimes and the facts for each
were found by a jury, the consecutive nature is not
prohibited ... .

(13T 25:24:-26:5).

In affirming the PCR court, the Appellate Division further

held that "the use of consecutive sentencing does not violate the

Sixth Amendment," and that under State v. Natale, 184 N.J. 458,

494 (2005), there is no pipeline retroactivity to Reid's direct

appeal.  (Exhibit CC).

A review of the judgment of conviction and the record in

this case demonstrates that there is no basis for petitioner's

Blakely claim.  Blakely applies where a sentence is imposed

outside of the outer limit of the ordinary sentencing range

because of grounds not before the jury.  Clearly, this is not the

case here.

Moreover, this Court notes that both the Appellate Division

and the PCR court found no constitutional violations in the

sentence imposed.  In particular, both state courts held that there was no Sixth Amendment violation under <u>Blakely</u>.  On direct appeal, the Appellate Division found no merit to Reid's arguments that his sentence was excessive, noting that the sentence imposed was within the sentencing guidelines and that the findings of fact as to the aggravating factors were based on competent and credible evidence in the record.  Therefore, where petitioner fails to show any violation of his federal constitutional rights, he is not entitled to habeas relief, and his claim will be denied because Reid fails to state colorable federal claim.

### III.   <u>CERTIFICATE OF APPEALABILITY</u>

This Court next must determine whether a certificate of appealability should issue.  <u>See</u> Third Circuit Local Appellate Rule 22.2.  The Court may issue a certificate of appealability only if the petitioner "has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  For the reasons discussed above, this Court's review of the claims advanced by petitioner demonstrates that he has failed to make a substantial showing of the denial of a constitutional right necessary for a certificate of appealability to issue.  Thus, this Court declines to issue a certificate of appealability pursuant to 28 U.S.C. § 2253(c)(2).

## CONCLUSION

For the above reasons, this Court finds that the § 2254 habeas petition should be denied on the merits and a certificate of appealability will not issue.   An appropriate Order follows.


S/SUSAN D. WIGENTON
United States District Judge

DATED: July 31, 2008

29